IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JATAVIOUS MCCRIMON,<br><br>Defendant. | CRIMINAL ACTION NO.<br><br>1:21-CR-407-SDG-CMS |

## **NON-FINAL REPORT & RECOMMENDATION**

Before the Court is Defendant Jatavious McCrimon's Motion to Dismiss Indictment or for Alternative Relief. [Doc. 24].

### **I.    BACKGROUND**

On October 19, 2021, a federal grand jury in the Northern District of Georgia returned a two-count indictment against Mr. McCrimon, charging him with attempted Hobbs Act robbery and a related gun offense. [Doc. 1]. At the time he was indicted, Mr. McCrimon was in the custody of the Fulton County Jail, and a Writ of Habeas Corpus Ad Prosequendum was issued. [Doc. 4]. On October 28, 2021, Mr. McCrimon was arraigned on the indictment, and he remained in federal custody pursuant to the writ. [Docs. 1, 8].

Six months later, on April 29, 2022, Mr. McCrimon's lawyer and counsel for the Government filed a joint motion for a competency hearing under 18 U.S.C.

§ 4241(a). [Doc. 20]. On June 8, 2022, I found Mr. McCrimon incompetent to stand trial and ordered that he be committed to the custody of the Attorney General for treatment in a suitable facility for a period not to exceed 120 days to determine whether there was a substantial probability that in the foreseeable future he would attain the capacity that would permit the proceedings to go forward. [Doc. 23].

Eight months later, Mr. McCrimon still had not yet been transferred to the medical facility. On February 2, 2023, Mr. McCrimon filed the instant motion, arguing that this Court should dismiss the indictment for violations of his due process rights and the Speedy Trial Act. [Doc. 24 at 2–7]. In the alternative, Mr. McCrimon asked this Court for injunctive relief, i.e., to order the Bureau of Prisons ("BOP") to transfer him to a medical facility immediately or to require the Government to conduct the assessment locally. [*Id.* at 7–8].

Within two weeks of the filing of the motion to dismiss, Mr. McCrimon was on his way to the FMC-Butner in North Carolina. [Doc. 28 at 1 (Government stating in its February 28th response brief that "BOP already transferred [Mr. McCrimon] to a suitable medical facility for competency evaluation and treatment thirteen days ago")]. According to a letter dated March 16, 2023, from the warden of FMC-Butner, Mr. McCrimon was admitted to the Mental Health Unit of FMC-Butner on March 14, 2023, and would be evaluated until July 11, 2023. [Doc. 30].

In a forensic evaluation dated July 11, 2023, a BOP forensic psychologist opined that Mr. McCrimon was presently incompetent to stand trial but that there was a substantial probability he could be restored to competency in the future. The examiner requested an additional 120-day period for evaluation and treatment, pursuant to 18 U.S.C. § 4241(d).

Upon receiving this evaluation, Mr. McCrimon and the Government jointly asked the Court to permit Mr. McCrimon to remain at FMC-Butner for an additional 120 days. In a proposed order, counsel jointly recounted their agreement that there was a substantial probability that within an additional 120-day period of evaluation and treatment, Mr. McCrimon would attain the capacity to permit the proceedings to go forward and that this time period was reasonable. [Doc. 32].

On July 21, 2023, I signed their proposed order, finding: (1) that there was a substantial probability that within an additional 120-day period of evaluation and treatment, Mr. McCrimon would attain the capacity to permit the proceedings to go forward, and (2) that this was a reasonable period of time for these efforts. [Doc. 32]. I ordered that Mr. McCrimon be committed to the custody of the Attorney General for an additional 120-day period for evaluation and treatment, pursuant to 18 U.S.C. § 4241(d)(2). [*Id.*]. On July 26, 2023, the warden wrote me another letter,

acknowledging his receipt of my July 21, 2023 Order and indicating that the new evaluation period would end on November 17, 2023. [Doc. 33].

## II. DISCUSSION

Mr. McCrimon presents multiple legal theories as to why his indictment should be dismissed. First, he claims that "the government has clearly violated § 4241(d) as well as Mr. McCrimon's due process rights under that statute." [Doc. 24 at 2–5]. He also argues that his speedy trial rights have been violated. [*Id.* at 5–7]. For the reasons discussed below, I disagree with each of these arguments and will recommend that his motion to dismiss be denied.

### A.   Due Process and 18 U.S.C. § 4241(d)

More than fifty years ago, in *Jackson v. Indiana*, the United States Supreme Court held that the Fourteenth Amendment's Due Process Clause prohibits a state from confining a defendant for an indefinite period simply because he is not competent to stand trial. 406 U.S. 715, 731 (1972). The Court held that the duration of any such commitment must "bear some reasonable relation" to its purpose. *Id.* at 738. Thus, a person "committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Id.*

Following the *Jackson* decision, Congress passed 18 U.S.C. § 4241, which provides that after an incompetency finding, the district court must "commit the defendant to the custody of the Attorney General" and then the "Attorney General shall hospitalize the defendant for treatment in a suitable facility . . . for such a reasonable period of time, not to exceed four months." 18 U.S.C. § 4241(d). The term "suitable facility" is defined as "a facility that is suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant." 18 U.S.C. § 4247(a)(2).

The two-step structure of § 4241(d)—i.e., commitment to the custody of the Attorney General, followed by a period of hospitalization—necessarily requires some pre-hospitalization period of time to allow the Attorney General to identify a suitable facility and arrange for the defendant's transportation to that facility. Neither the Supreme Court nor Congress set an outer limit for how long a pre-hospitalization commitment period may be before a defendant's due process rights are violated. Here, Mr. McCrimon appears to argue that any period of delay longer than four months amounts to a violation.

I begin my analysis by noting that there has been no violation of § 4241(d). The statute clearly and unambiguously refers to the period of time for which the defendant may initially be hospitalized, i.e., four months. Because the statute does

not reference custody preceding the hospitalization, I find that there has been no violation of § 4241(d). *See United States v. Magassouba*, 544 F.3d 387, 412–414 (2d Cir. 2008) (rejecting defendant's argument that after the district court ordered him committed to the Attorney General under § 4241(d), his two-month pre-hospitalization confinement counted against the four-month custodial hospitalization allowed by § 4241(d)(1)); *United States v. Lee*, No. 1:21-CR-20034, 2022 WL 18275882, at *4 (S.D. Fla. Dec. 27, 2022), report and recommendation adopted, No. 21-20034-CR, 2023 WL 168755 (S.D. Fla. Jan. 12, 2023) ("[T]he plain language of the text of Section 4241(d)(1) indicates that the four-month time limit set out in the Statute applies only to the period of hospitalization and begins to run once the defendant has been hospitalized. On this point, the statute is not ambiguous. Therefore, the pre-hospitalization delay in this case does not violate Section 4241(d)(1).").

Relying on a single Ninth Circuit case, Mr. McCrimon argues that when read together, § 4241(d) and *Jackson* require that the pre-hospitalization commitment period not exceed four months. Mr. McCrimon argues that it is unreasonable for the pre-hospitalization period to be longer than the hospitalization period itself. [Doc. 24 at 4]. In response, the Government has cited to numerous cases holding that

multi-month periods of pre-hospitalization delay based on a lack of available bed space do not violate due process. [Doc. 28 at 12]. I find these cases persuasive.

However, there is no need to resolve the issue of whether there has actually been a due process violation in this case because regardless of the answer, dismissal of the indictment is not the appropriate remedy. Mr. McCrimon has cited no authority from any jurisdiction to support his request for dismissal. Even in the central case on which Mr. McCrimon relies, *United States v. Donnelly,* the Ninth Circuit determined that dismissal of the indictment in a similar set of circumstances was not warranted and that only injunctive relief might be appropriate. 41 F.4th 1102, 1107 n.3 (9th Cir. 2022). In the absence of any authority authorizing dismissal of an indictment based on pre-hospitalization delay, I will recommend that the district judge deny the motion. *See Magassouba*, 544 F.3d at 411 n.16 (holding that where there was a lengthy delay based on a lack of bed space, dismissal of the indictment was not the appropriate remedy and that the defendant could have filed either a petition for a writ of mandamus to force the district court to provide additional justification for continued detention or a petition for a writ of habeas corpus to secure the defendant's release); *see also United States v. McCall*, No. 1:21-CR-00474-UNA, 2022 WL 19561433, at *2 (N.D. Ga., Dec. 12, 2022, Larkins, J.), report and recommendation adopted, 2023 WL 3010177 (N.D. Ga. Apr. 19, 2023,

Jones, J.) (ruling that it was not necessary to decide whether the defendant's due process rights had been violated based on an eight month pre-hospitalization delay because it was clear that the remedy sought—dismissal of the indictment—was not the proper remedy); *United States v. Cottingham*, No. 5:19-CR-00010-LCB-JHE-1, 2020 WL 4341720, at *1–2, 4 (N.D. Ala. July 6, 2020), report and recommendation adopted, 2020 WL 4336018 (N.D. Ala. July 28, 2020) (same ruling where the defendant was in custody for six months waiting on bed space for a § 4241(d) evaluation).

To the extent Mr. McCrimon argues alternatively for injunctive relief [Doc. 24 at 7], his request is moot because he has already been transferred to FMC-Butner, and his counsel is in agreement that he should stay there for an additional four-month evaluation period.

### B.     Speedy Trial Act

The Sixth Amendment guarantees a defendant the right to a "speedy" trial. U.S. CONST. amend. VI. The Speedy Trial Act sets specified time limits to give effect to this Constitutional guarantee, providing seventy days for the Government to commence trial of the defendant after the filing of an information or indictment or a defendant's first appearance, whichever occurs later. *See* 18 U.S.C. § 3161(c)(1). The Speedy Trial Act further provides certain periods of time that are

"excludable" from the seventy-day clock, or in other words, stop the clock. *See id.* § 3161(h). Relevant to this case, the following periods of time are excludable:

> • 18 U.S.C. § 3161(h)(1)(A): "delay resulting from any proceeding, including any examinations, to determine the mental competency . . . of the defendant"
>
> • 18 U.S.C. § 3161(h)(1)(F): "delay resulting from transportation of any defendant . . . to and from places of examination . . . except that any time consumed in excess of **ten days** from the date of an order . . . directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable"
>
> • 18 U.S.C. § 3161(h)(4): "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial"

18 U.S.C. § 3161(h) (emphasis added).

Mr. McCrimon argues that notwithstanding the broad exclusion contained in § 3161(h)(4) for delays resulting from the defendant's mental incompetency, any pre-hospitalization delay beyond ten days is not excludable, pursuant to § 3161(h)(1)(F). [Doc. 24 at 5–7]. The Government responds that 18 U.S.C. § 3161(h)(4) should control, citing the Eleventh Circuit's unpublished decision in *United States v. Pendleton*, 665 F. App'x 836, 839 (11th Cir. 2016), as well as published decisions from the Ninth Circuit and Seventh Circuit. [Doc. 28 at 17].

The Courts of Appeal are split on whether periods of pre-hospitalization delay in excess of ten days are excludable under the Speedy Trial Act. *See McCall*, 2022 WL 19561433, at *3 (highlighting cases that indicate a circuit split). Although it is

an unpublished decision, the Eleventh Circuit's *Pendleton* decision squarely addressed this issue. The court held that where the defendant is mentally incompetent and there is an unreasonably long transportation delay (making the time period not excludable under § 3161(h)(1)(F)), that time is nevertheless excludable under § 3161(h)(4). *See Pendleton*, 665 F. App'x at 839. The Eleventh Circuit explained that the Speedy Trial Act "does not necessitate the conclusion that only one of the exclusions under § 3161(h) can apply at a time." *Id.*

Following *Pendleton*, I conclude that all time between June 8, 2022 (when this Court declared Mr. McCrimon incompetent) and the date that the Court declares him restored or un-restorable shall be excluded from Speedy Trial Act calculations under § 3161(h)(4). Under this reasoning, there has been no Speedy Trial Act violation, and there is no basis to dismiss the indictment.

### III.  CONCLUSION

For the reasons stated, I **RECOMNMEND** that Mr. McCrimon's Motion to Dismiss Indictment or for Alternative Relief [Doc. 24] be **DENIED**.

**SO ORDERED** this 7th day of August, 2023.

_____
CATHERINE M. SALINAS
United States Magistrate Judge